## Early *versus* Rolfe.

1. Where a husband transacts the ordinary business of his wife's estate, such as the receipt of her rents, interest and the like, with her knowledge, her assent may be fairly inferred, and the jury may adopt the presumption that he was acting under her authority and hold her accordingly. Under such circumstances the wife will be estopped from claiming interest money thus received by the husband.

2. Undecided whether mere knowledge and want of dissent on the part of the wife would raise a presumption of power in the husband to receive and receipt for the corpus of her personal estate.

June 2d 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ. PAXSON, J., absent.

Error to the Court of Common Pleas of *Elk county:* Of May Term 1880, No. 102.

Scire facias sur mortgage by H. M. Rolfe against C. R. Early.

Mrs. Fannie Wilmarth, wife of Frederick Wilmarth, owned certain real estate which, in October 1874, she conveyed to Early, the defendant, who gave her a mortgage on said property for the unpaid purchase-money. On March 26th 1878, Mrs. Wilmarth and her husband assigned the mortgage to Rolfe, the plaintiff. This suit was brought by Rolfe to recover the balance due on the mortgage. The only subject of dispute between the parties was as to the allowance of three payments made to Mrs. Wilmarth's husband.

The defendant pleaded "set off," "payment with leave," &c.

At the trial, Wilmarth, the husband of the mortgagee, testified that Early had paid him $600, in three different payments, on account of interest due on the mortgage. When asked whether he had authority from his wife to receive this money, he answered, "Yes, sir; to use in the family;" but afterwards, on cross-examination, said, "I had no special authority, only being her husband, and getting it for her benefit as well as mine. She knew that I got these payments because I told her." He further testified that the money thus received was used "for family expenses."

The third point of the defendant, with the answer of the court, McDermitt, P. J., of the 35th Judicial District holding a special court, was as follows:

That, even if the mortgage belonged to Mrs. Wilmarth at the time of the alleged payments to Fred. Wilmarth, a payment to him without her authority would not operate to discharge the mortgage debt.

Ans. "There being no evidence of any previous authority having been conferred by Mrs. Wilmarth on her husband, to receive payment, in whole or in part, of the mortgage in suit from the defendant, nor evidence of subsequent ratification by her of his acts in receipting for what he did receive, beyond her mere subsequent knowledge of the fact, the payments so made by the defend-

[Early v. Rolfe.]

ant, do not bind her, nor her assignee, the plaintiff. So explained, the point is affirmed."

Verdict for plaintiff, when defendant took this writ and alleged, inter alia, that the court erred in the answer to the above point.

*Rufus Lucore, John G. Hall* and *C. H. McCauley*, for plaintiff in error.—The husband having assumed to act as the agent of the wife in receiving her money, she was bound to express her dissent when it came to her knowledge, or her acquiescence will be presumed.

There is another class of cases, however, where the wife, undertaking to recover from her husband's estate moneys received by him as income of her estate, the courts have seized upon slight circumstances to show her assent to his receipt and use of the money as his own. *A fortiori* should the debtor who pays the money be protected; for since it is settled by a long line of decisions that a husband receiving money of his wife is presumed to receive it as her agent, it may well be that his estate should be liable for such receipts, where the debtor paying the same should be protected: McGlinsey's Appeal, 14 S. & R. 65; Husbands on Married Women, p. 105; Martha Mann's Appeal, 14 Wright 375; Bardsley's Estate, 7 W. N. C. 49.

There is neither reason nor authority for exempting Mrs. Wilmarth from the general rules applicable to principal and agent. An acquiescence in the assumed agency of another, when the acts of the agent are brought to the knowledge of the principal, is equivalent to an express authority: 2 Kent's Com. 827; 2 Greenl. on Ev., sect. 66. Stephens and Wife's Appeal, 6 Norris 202, decides that a married woman is subject to such general rules, that case holding that notice to a husband, while acting as agent for the wife, is notice to the wife.

*George A. Rathbun*, for defendant in error.—The Act of 1848 prevented the wife's choses in possession from becoming the property of her husband, denied his succession to dominion over her choses in action, and debarred him from ownership of the use of her real estate: Bear's Admr'r v. Bear, 9 Casey 528. The husband could not even act as her agent without being empowered in writing. If she desires to dispose of her estate, real or personal, she may make her husband the agent for the purpose by an instrument duly acknowledged, separate and apart from him: Rosburgh's Ex'r v. Sterling's Heirs, 3 Casey 293; Glyde v. Kiester et ux., 8 Casey 88. All the cases cited by plaintiff in error are those wherein it was held that the receipt and conversion by the husband of the wife's money, with her knowledge and consent, might be construed as evidence of a gift, and recovery denied. The husband has no authority, as husband, to discharge an indebt-

edness due the wife: Goodyear *v.* Rumbaugh, 1 Harris 482;
Trimble *v.* Reis, 1 Wright 455; McKinney *v.* Hamilton, 1 P. F.
Smith 65. The burden of proof to show authority to the husband
was on the defendant: Bachman *v.* Killinger, 5 P. F. Smith 414;
2 Greenl. on Ev., sect. 66; Hyatt *v.* Johnson, 10 Norris 196.

Mr. Justice Gordon delivered the opinion of the court, June
21st 1880.

It is certainly not necessary to cite authority in order to prove
that since the Act of 1848, the husband cannot dispose of his
wife's choses in action without her consent, and it may be conceded
that he cannot, of his own motion, receipt for her money or satisfy
her judgments or mortgages. But it by no means follows that with
her consent he may not do all these things and even more, appro-
priate her moneys and assets to his own use. So, it was held in
Martha Mann's Appeal, 14 Wright 375, where a husband had,
from time to time, received money from his wife's debtor in her
presence, that it was a proper inference not only that he had
rightly received it, but where he had appropriated it to their com-
mon benefit, that it was so appropriated with her assent, and that
she could not, after his death, recover it from his estate. Indeed,
to hold otherwise would be measurably to deprive the married
woman of the confidence and agency of her husband in the care
and management of her separate property and in the disposition of
her business affairs; a deprivation which, in most instances, would
be to her very serious and in some cases disastrous. As a rule,
married women, in consequence of the character of their educa-
tion, as well as by reason of the circumstances by which they are
ordinarily surrounded, have little of business knowledge or ca-
pacity, and if they cannot have the aid of their husbands to collect
their rents, receive the interest upon their mortgages, judgments
and other obligations without a power of attorney or other formal
delegation, they are bad off indeed. The relation of husband and
wife is one of the profoundest trust and confidence, and is so re-
garded by the community at large; hence, where the husband acts
for the wife in matters relating to the disposition of her personal
property, he is presumed to be so acting with her consent and as
her agent. As a rule, people cannot be made to think that in deal-
ing with a husband for his wife, he must be regarded as a stranger,
and that he can do no business for her except under her express sanc-
tion. They presume, and so ought to presume, that the two are
acting in harmony; that he acts with her assent and for her wel-
fare. It follows that where, in ordinary transactions, as in those
above enumerated, the husband receives the moneys of the wife, and
the circumstances are such that her assent may be fairly inferred,
the jury may adopt the presumption that he was acting under her
authority and hold her accordingly. We conclude then that the

[Early v. Rolfe.]

court below erred in saying to the jury, in answer to the plaintiff's third point, that there was no evidence of any previous authority having been conferred by Mrs. Wilmarth on her husband to receive payment in whole or in part of the mortgage in suit from the defendant, nor any evidence of a subsequent ratification of the payments so made.  We think differently; we think there was evidence from which such authority might properly be inferred. Wilmarth testifies that he received, on account of this mortgage, some six hundred dollars in three different payments of two hundred dollars each; and when asked whether he had authority from his wife so to do, he answered, "Yes, sir; for the use of the family."  It is true he afterwards qualifies this by saying: "I had no special authority, only being her husband and getting it for her benefit as well as mine."  He also says that she knew of his receipt of these payments because he told her.  But the above stated qualification has no effect in the way of altering the plain inference resulting from this testimony.  Here is the husband properly doing business for the wife by receiving the interest on her mortgage, not once but thrice; of this she has full knowledge; she knows that he is receiving this money and applying it to the relief of their joint necessities, and knowing all this she neither objects nor dissents; under such circumstances we do not think it would be a strained inference to presume her assent.  It would indeed have been very bad faith in her did she intend to object to the business thus transacted, to allow her debtor to go on paying to her husband when her notice to the contrary would have at once put a stop to it.  As, however, the presumptions are in favor of good faith rather than bad, we may well suppose that Wilmarth had the assent of his wife to receive the money paid to him by the defendant.  Whether mere knowledge and want of dissent on part of the wife would raise a presumption of power in the husband to receive and receipt for the corpus of his wife's personal estate, as in this case, to receive the money in satisfaction of her mortgage, is something upon which we do not pass, and merely refer to the case of Bardsley's Estate, 7 W. N. C. 48, where a similar question is fully discussed by Judge Penrose.  However this may be, we repeat such knowledge and want of dissent are evidence from which a jury may infer a power to the husband from the wife to transact the ordinary business of her estate, such as the receipt of her rents, interest and the like.

Judgment reversed, and a *venire facias de novo* is awarded.